# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## (Alexandria Division)

| | |
|---|---|
| ALEXANDER TOKAREV, <br><br> and <br><br> FIDELIS MSACKY, <br><br> and <br><br> SOULEYMANE CAMARA, <br><br> Plaintiffs, <br><br> v. <br><br> GOLD COAST IT SOLUTIONS, LLC, <br><br> and <br><br> ARJUN AKKARA, <br><br> Defendants. | Case No. _____ |

## COMPLAINT

COME NOW Plaintiffs, ALEXANDER TOKAREV, FIDELIS MSACKY, and SOULEYMANE CAMARA, by Counsel, and move this Honorable Court for judgment against Defendants, GOLD COAST IT SOLUTIONS, LLC ("GCIT") and ARJUN AKKARA, jointly and severally, based upon Defendants' failure to pay any compensation to Plaintiffs for part of their tenure as employees of GCIT, as well as their failure to pay any overtime compensation to them, in violation of § 7 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"). In support thereof, Plaintiffs state as follows:

1

## I. INTRODUCTION

1. This action is brought against Defendant GCIT, which, upon information and belief, is owned and managed by its President, Defendant, AKKARA. Plaintiffs are three former employees of GCIT who were employed by the company on an hourly basis, and therefore not subject to any exemption from coverage under the FLSA. Plaintiffs contend that Defendants engaged in a pattern or practice of unlawful conduct resulting in violations of their rights under the FLSA. In particular, Defendants failed to pay Plaintiffs any wages whatsoever, from the time they signed their respective employment agreements, until such time as Defendants were able to outsource Plaintiffs to other companies. In addition, Defendants failed to pay Plaintiffs any wages whatsoever during their training period, and, despite the fact that Plaintiffs regularly worked more than 40 hours per week, Defendants did not pay them at the premium rate of one and one-half times their regular rates of pay for those hours worked.

2. Defendant GCIT, the former employer of Plaintiffs within the meaning of the FLSA, employed Plaintiffs to work as computer information technology ("IT") programmers based out of their Tysons Corner (Fairfax County), Virginia location.

## II. PARTIES

3. Plaintiffs TOKAREV, MSACKY, and CAMARA reside in Fairfax County, Virginia.

4. Tokarev worked for GCIT as an IT specialist, from 1/12/15 to 2/13/16.

5. Msacky worked for GCIT as an IT specialist from 5/4/15 through 3/20/16, also as an IT specialist.

6. Camara worked for GCIT as an IT specialist from 5/4/15 through 3/28/16.

7. Defendant GCIT is a Virginia limited liability company with its corporate headquarters and registered agent located in Fairfax County, Virginia.

2

8. GCIT has at all times relevant to this action, been an enterprise which engages in interstate commerce within the meaning of the FLSA.

9. GCIT was Plaintiffs' "employer" within the meaning of 29 U.S.C. § 203(d) of the FLSA, since it exercises economic and operational control over the employment relationship with Plaintiffs.

10. Defendant Akkara is the sole member of the LLC that comprises GCIT, and a manager of the company, and in particular, a manager of the Plaintiffs herein.

11. Upon information and belief, Akkara is also the sole owner of GCIT. As such, he is also an "employer" within the meaning of the FLSA.

### III. JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 201, *et seq.*; 29 U.S.C. § 216, 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a).

13. Defendant GCIT is an enterprise with "employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i).

14. Upon information and belief, Defendant GCIT has an annual dollar volume of $500,000 or more in sales made or business done, exclusive of excise taxes at the retail level that are separately stated. 29 U.S.C. § 203(s)(1)(A)(ii).

15. Venue is proper pursuant to 28 U.S.C. Section 1391(b)(ii) because Defendant GCIT transacted business in this district, the Plaintiffs were employed by Defendant GCIT in this district, and all of the actions complained of were conducted within this district.

## IV.   STATEMENT OF FACTS

16. Each of the three Plaintiffs' employment by GCIT was comprised of three distinct time-periods: the "training and on-boarding" period; the "employment contract" period; and the "outsource" period.

17. The "training and on-boarding" period commenced on the date specified in the "Invitation Letter," and concluded on the date immediately preceding the date of execution by each of the Plaintiffs of his Employment Agreement with GCIT.

18. At some point during the training and onboarding process, Plaintiffs and other similarly situated employees executed employment agreements at the insistence of GCIT.

19. Each of those employment agreements designated Plaintiffs and others similarly situated as "employees," as of the date of execution of those agreements.

20. From the date of execution of their employment agreements until the date upon which they began working for the companies to which GCIT outsourced them through an intermediary company, Experis, GCIT failed to pay Plaintiffs and others similarly situated any salary, wages, or commissions.

21. The "employment contract" period commenced on the date each Plaintiff executed GCIT's Employment Agreement, and ended on the date immediately preceding the commencement of his service to the company to whom he was outsourced, which, for each of these Plaintiffs, was the United States Patent and Trademark Office through Sciences Application International Corporation (SAIC), hereafter, "USPTO/SAIC."

22. The "outsource" period commenced on the date upon which each Plaintiff commenced work for USPTO/SAIC, as designated on his USPTO Project Determination Form (PDF), and ended

4

on the date immediately preceding that employee's commencement of employment as a direct employee of SAIC.

23. Tokarev's "training and onboarding" period commenced on or about 1/14/15, and ended on 2/16/15.

24. Tokarev's "employment agreement" period of employment commenced on 2/17/15 and ended on 4/26/15.

25. Tokarev's "outsource" period of employment commenced on 4/27/15 and ended on 2/14/16—the day preceding the date upon which he became employed directly by SAIC.

26. Msacky's "training and onboarding" period commenced on or about 5/4/15 and ended on 5/18/15.

27. Msacky's "employment agreement" period of employment commenced on 5/19/15 and ended on 7/13/15.

28. Msacky's "outsource" period of employment commenced on 7/14/15 and ended on 3/20/16—the day preceding the date upon which he became employed directly by SAIC

29. Camara's "employment agreement" period of employment commenced on 5/18/15 and ended on or about 7/14/15.

30. Camara's "training and onboarding" period commenced on or about 5/4/15 and ended on 5/17/15.

31. Camara's "outsource" period of employment commenced on 7/15/15 and ended on 3/27/16—the day preceding the date upon which he became employed directly by SAIC.

32. During the "training and on-boarding" period of their employment, neither the three Plaintiffs nor any other GCIT employee similarly situated received from GCIT any salaries, commissions, or wages, including a "training wage," pursuant to 29 U.S.C. § 214(a), *et. al.*

33. During the "employment contract" period of their employment, neither the Plaintiffs nor any other GCIT employees similarly situated received from GCIT any salaries, commissions, or wages—including a "training wage," notwithstanding express language contained in their employment agreements—which were drafted by GCIT and executed by each of the Plaintiffs—that repeatedly refers to each Plaintiff as an "employee," and acknowledges that GCIT was his employer.

34. The FLSA requires an employer to pay its employees at a rate of at least one and one-half times their regular rate for time worked in excess of forty (40) hours in any work week. This is commonly referred to as "time-and-a-half" pay for overtime work.

35. GCIT was aware that Plaintiffs and other similarly situated employees were working overtime hours, during their training and on-boarding period, but GCIT declined to pay them premium pay (150% of base hourly rate) for those overtime hours.

36. GCIT began paying hourly wages to Plaintiffs and others similarly situated, only after the company was able to successfully outsource each of them to other companies which paid GCIT for their services, the "outsource" period.

37. Although GCIT was aware that during the "outsource" period, Plaintiffs and other similarly situated GCIT employees were regularly working overtime hours, in excess of forty (40) hours in a work-week, the company willfully refused to compensate Plaintiffs at their overtime rate, in violation of the FLSA.

38. Thus, despite working overtime, Plaintiffs and other similarly situated GCIT employees were not paid time-and-a-half pay by GCIT for any of the overtime hours they worked.

## V. WILLFUL VIOLATION

39. Through internet websites advertising job opportunities, GCIT actively recruited job-seekers with computer-programming education, training, and experience.

40. Under the guise of hiring them directly, GCIT sent promising candidates an "invitation letter," by which it invited them to join one of its "Analyst Programs," to include "JAVA" and "JAVA Script" "Analyst Programs."

41. The invitation letter explained, "The Analyst Program will commence on [DATE] at [the company's] Tyson's Corner location[,] with the "onboard process spanning 5-7 weeks and requiring intensive . . . [technical computer program related] training on a daily basis (Mon – Fri)." *Id.*

42. The invitation letter went on to state, "Successful completion of the Analyst Program will make you eligible for full time *deployment* at our project or offsite locations with the following benefits." (emphasis added). It goes on to designate an income range, two weeks of paid vacation, annual profit sharing bonus target, health insurance, participation in GCIT's 401-K program, and a relocation package. *Id.*

43. Although, according to the Invitation letter, the onboarding process is slated to span 5-7 weeks, *Id.*, within about two weeks of their commencement of the "onboarding process," GCIT extended a written offer of employment, along with a proposed Employment Agreement.

44. Each of the Plaintiffs executed the Employment Agreement within a few days after receiving it, along with the written offer of employment letter.

45. GCIT knew, or should have known, that Plaintiffs were entitled to be paid "straight-time" wages for up to forty hours per week.

7

46. Upon information and belief, GCIT willfully, deliberately, and intentionally refused to pay Plaintiffs for any of their straight time hours actually worked, during both the "training and onboarding" and "employment agreement" periods of employment.

47. Upon information and belief, during the "training and onboarding" period of employment, each of the Plaintiffs worked in excess of forty hours per week, during at least some of the weeks comprising that period of employment.

48. Upon information and belief, during the "employment agreement" period of employment, each of the Plaintiffs worked in excess of forty hours per week, during at least some of the weeks comprising that period of employment.

49. Upon information and belief, during the "outsource" period of employment, each of the Plaintiffs worked in excess of forty hours per week, during at least some of the weeks comprising that period of employment.

50. GCIT failed to pay any overtime wages to any of the Plaintiffs, for any of the over-time hours worked by them during any of the three periods of employment.

51. Upon information and belief, GCIT willfully, deliberately, and intentionally refused to pay Plaintiffs for any of their overtime actually worked.

52. GCIT knew, or should have known, that Plaintiffs were entitled to time-and-a-half overtime pay under the FLSA, during all relevant employment periods, as defined, *supra*.

53. Plaintiffs were therefore owed compensation for time-and-a-half overtime wages from GCIT, which willingly and knowingly withheld those wages.

## VI. CAUSE OF ACTION
(Fair Labor Standards Act)

54. The foregoing paragraphs are incorporated as though fully set forth herein.

55. During the period of time when Plaintiffs were employed by GCIT, they performed overtime work for which the overtime rate was not paid, in violation of FLSA, 29 U.S.C. § 207(a)(1),(2).

56. GCIT's pay system was unilaterally imposed upon Plaintiffs.

57. As a result of GCIT's willful and knowing failure to properly compensate Plaintiffs, they have suffered substantial delays in receipt of wages owed to them.

58. Pursuant to FLSA, 29 U.S.C. §§ 207, 216 (b), GCIT owes Plaintiffs compensation for their straight time worked, as well as for their overtime work, and an additional equal amount as liquidated damages, together with an additional sum for attorneys' fees and costs.

59. Defendant Akkara shares joint and several liability with GCIT because he is an owner/manager of the company.

## VII.   *AD DAMNUM* CLAUSE

60. The foregoing paragraphs are incorporated as though fully set forth herein.

61. Plaintiffs are entitled to straight time wages, as well as overtime, and liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b).

62. Plaintiffs are further entitled to an award of reasonable attorneys' fees, costs, and expenses.

WHEREFORE, Plaintiffs, ALEXANDER TOKAREV, FIDELIS MSACKY, and SOULEYMANE CAMARA, seek judgment against Defendants GCIT and AKKARA, and request the following relief:

(a) That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiffs;

(b) That the Court issue a declaratory judgment that Defendant GCIT's acts, policies, practices, and procedures complained of herein violated provisions of the FLSA;

(c) That Defendant GCIT be enjoined from further violations of the FLSA;

(d) That Plaintiffs recover unpaid straight time, overtime, and liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), in amounts to be determined at trial;

(e) That Plaintiffs recover an award of reasonable attorneys' fees, costs, and expenses; and

(f) That the Court award Plaintiffs such additional relief as the interests of justice may require.

63. **PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

ALEXANDER TOKAREV,

FIDELIS MSACKY,

and

SOULEYMANE CAMARA,

By Counsel

The Leiser Law Firm, PLLC
By: Phillip B. Leiser, Esq.
1749 Old Meadow Road, Suite 630
Tysons Corner, Virginia 22102
TEL: (703) 734-5000, ext. 101
FAX: (703) 734-6000
pbleiser@leiserlaw.com
VASB # 41032
*Counsel for Plaintiffs Alexander Tokarev, Fidelis Msacky, and Souleymane Camara*